UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STEPHEN KEEFE | ) | Case No. 08-13560-SSM |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| GORDON P. PEYTON, TRUSTEE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 09-1008 |
| | ) | |
| STEPHEN KEEFE, *et al.* | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OPINION**

This is an action by the chapter 7 trustee, Gordon P. Peyton, to sell the interests of both

the debtor, Stephen Keefe, and his former wife, Elizabeth McCarthy, in real property located in

Martinsburg, West Virginia.  The debtor supports the trustee's sale of both interests, while Ms.

McCarthy—who resides in the property with the minor child of the marriage—opposes it on the

ground that the detriment to her exceeds the benefit to the estate, and she asks that the trustee, in

lieu of selling both interests in the property, be authorized to accept her offer of $20,000 to

purchase the debtor's undivided half interest.  A trial was held on March 22, 2010, at which the

trustee was represented by counsel, and the debtor and Ms. McCarthy each represented

themselves.  After granting summary judgment to the trustee on certain issues, the court received

evidence and heard argument from the parties on the detriment to Ms. McCarthy and the value of

1

the debtor's half interest.  For the reasons stated, the court determines (a) that the $20,000 offer

does not fairly represent the value of the debtor's half-interest, and (b) that the trustee may sell

both Ms. McCarthy's and the debtor's interests in the property.  This opinion constitutes the

court's findings of fact and conclusions of law under Rule 7052, Federal Rules of Bankruptcy

Procedure and Rule 52(a), Federal Rules of Civil Procedure.

<u>Background and Findings of Fact</u>

Stephen Keefe ("the debtor") filed a voluntary chapter 7 petition in this court on June 20,

2008, and received a discharge on October 6, 2008.  The plaintiff, Gordon P. Peyton ("the

trustee"), was appointed as chapter 7 trustee.  The schedules list a total of $72,690 in unsecured

debt.  Among the assets listed in the debtor's schedules is a "fee simple" interest in a "home" in

Martinsburg, West Virginia, which he valued at $200,000[1] and reported as being unencumbered.[2]

On August 27, 2008, the trustee filed an asset notice, and a notice of need to file a proof of claim

was issued.  Unsecured claims of $14,954 were filed prior to the claims bar date, and Ms.

McCarthy filed a priority unsecured claim in the amount of $47,127 after the bar date.[3]

---

[1] It is not clear whether the $200,000 is intended as the value of the property or only the debtor's
half interest.

[2] Among the trustee's exhibits at trial was a title report reflecting that the property is indeed
unencumbered.

[3]  Of the amount claimed, $44,000 represents spousal support becoming due after the filing of the
petition through May 2016.  The trustee has filed an objection to inclusion of the unmatured
spousal support payments.  *See* § 502(b)(5), Bankruptcy Code (disallowing claims "for a debt
that is unmatured on the date of the filing of the petition and that is excepted from discharge
under section 523(a)(5) of this title.").  The trustee does not object to allowance of the remaining
$3,127 as a priority unsecured claim.  Although Ms. McCarthy's claim was filed after the claims
bar date, tardily-filed priority claims are paid on a par with other priority claims and ahead of
general unsecured claims.  § 726(a)(1), Bankruptcy Code.  Although no hearing has ever been
set on the trustee's objection, it appears well-taken, and the court will assume, for the purpose of
the present action, that the total necessary to pay the filed claims in full is $18,081.

On January 9, 2009, the trustee brought this action under §363(h) of the Bankruptcy Code to sell both the estate's interest and the interest of Ms. McCarthy in property located at 111 South Raleigh Street, Martinsburg, West Virginia, or in the alternative to accept Ms. McCarthy's offer to buy the debtor's interest for $20,000.  Ms. McCarthy filed an answer on February 12, 2009, and amended it on February 17,  2010.  Her answers admitted the allegations in the complaint and requested that the trustee sell the estate's interest in the property to her for $20,000.  The debtor answered on February 17, 2009 and, like Ms. McCarthy, admitted the allegations in the complaint but requested that the court order a sale of the property "either by a free market sale or at auction."  Keefe Answer at 2.  On March 1, 2010, the trustee filed a motion for partial summary judgment.  (Doc. # 23).

The debtor and Ms. McCarthy purchased the Raleigh Street property in the fall of 1997 while they were married for $185,000.  It consists of a two and a half story, 5,602 square foot, 12-room stucco residence on 0.505 acres of land   After acquiring the property, the debtor and Ms. McCarthy were successful in having it rezoned for "Service Business," with the idea that the first floor could be used for a café or similar light business use, although at the present time the property is only used as a residence.  The debtor and Ms. McCarthy divorced in 2006, and the property was put on the market for $699,000.  Complaint at ¶ 2.  The price was reduced four times, and the property is currently listed for $275,000.  According to the testimony at trial, no offers have been made on the property.  Two appraisals of the property were offered into evidence: one completed in February 2009 valued the property at $308,000, and the second—a "drive-by" appraisal—completed in March 2010 valued the property at $200,000.  Ms.

McCarthy testified that she thought the property might sell for $200,000.  The debtor testified that in his opinion the property's value was between $150,000 and $200,000.

Ms. McCarthy  resides in the property with her and the debtor's minor child.  She described the property (originally constructed in the 1870s, but with later additions) as a semi-dilapidated Queen Anne style home.  One-third of the house is heated by central heat.  About eighty percent of the plumbing in the home is finished and sixty percent of the electrical work.  Ms. McCarthy and the debtor made improvements on the home while they lived there.  After their divorce, Ms. McCarthy continued to make improvements on the home by installing a full bath and a half bath.  She testified that because there is no mortgage on the home, it is very affordable; her utility and insurance bills cost her around $550 a month and if she were to add to that the cost of water and garbage service, she would allocate an additional $70 a month

<u>Conclusions of Law and Discussion</u>

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  Approval of the sale of property is a core proceeding in which a final judgment may be entered by a bankruptcy judge.  28 U.S.C. § 157(b)(2)(N).  Venue is proper in this district under 28 U.S.C. § 1409(a).  The defendants have been properly served and have appeared generally.[4]

---

[4] For the purpose of the present opinion, the court need not reach the issue of whether a debtor is either a necessary or proper party to an action under § 363(h) to sell a co-owner's interest in property of the estate.  The only party that would normally be adversely affected by the sale of the co-owner's interest is the co-owner.  With respect to the estate's interest in the property, a debtor normally does not have standing to object unless he is solvent, and a sale would result in a

II.

Under § 541(a)(1), Bankruptcy Code, a debtor's bankruptcy estate includes "all legal or equitable interest of the debtor in property as of the commencement of the case."  Here the debtor's one-half undivided interest in property held as tenants in common with Ms. McCarthy became property of the estate upon the filing of the petition.  The trustee may sell the estate's one-half interest in the property for the benefit of creditors, and if the four conditions set forth in 363(h) are met, he may also sell the co-owner's interest.  § 363(h), Bankruptcy Code.  Section 363(h) provides,

> the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1)  partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2)  sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3)  the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4)  such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

---

surplus after payment of all claims.  *Willemain v. Kivitz*, 764 F.2d 1019 (4th Cir. 1985).  The complaint here, however, did not seek merely sale of the co-owner's interest but alternatively seeks approval to sell the estate's interest to Ms. McCarthy for $20,000.  Since the debtor can make a plausible case that sale of both interests would net enough that his half-share would not only pay all allowed claims in full but result in a surplus, he has standing to be heard with respect to the alternative relief requested, that is, the sale of his interest alone.

*Id.* § 363(h).  The co-owner has the right to match the price at which the property is to be sold, *Id.* § 363(i), and in any event to receive his or her share of the proceeds after deduction of the costs of sale.  § 363(j), Bankruptcy Code.  Additionally, the co-owner's share is not chargeable with the trustee's compensation.  *Id.*

Both Ms. McCarthy's and the debtor's answers admit that partition in kind of the property is impracticable, that the sale of the estate's undivided interest would realize significantly less for the estate, and that the property was not used in the production, transmission, or distribution, for sale of any energy source.  At the beginning of trial, the trustee moved for summary judgment on these three issues, which the court granted.  Thus, the only issues left for determination are whether the benefit to the estate of the sale of the whole property outweighs the detriment to Ms. McCarthy, *Id.* § 363(h)(3), and whether the trustee, instead of selling both interests, should be allowed to sell the estate's half-interest to Ms. McCarthy for $20,000.

## A.

Although there is no dispute that sale of both interests as a unit will realize a greater sum for the bankruptcy estate than the sale of the debtor's half interest alone, some discussion of the issue is nevertheless appropriate, since the extent of the disparity will not only affect the analysis with respect to the balancing of the benefit and detriment, but is directly relevant to the debtor's objection to the sale of his half-interest alone.  Unfortunately, the evidence before the court is insufficient to make a confident finding.  The trustee has not attempted to market the debtor's half-interest to anyone except Ms. McCarthy—who is certainly a logical choice but whose ability to pay is severely impacted by her own limited financial resources.  Put another way,

6

while a co-owner would normally have the greatest incentive to purchase the debtor's interest, it

is clear that the $20,000 offer represents only the amount Ms. McCarthy is able to pay and not

what she would be willing to pay if she had access to more funds.  What a stranger would pay for

the half-interest, if the trustee attempted to market it, is at best speculative.  Such a purchaser

might be content to wait for a turnaround in the real estate market and to simply share in the

sales proceeds.  Or the purchaser might wish to compel immediate sale of the property by

bringing a state court partition suit.  Such a suit would necessarily result in some level of legal

fees in addition to the normal costs of sale.  And, in any event, a stranger would not be content

with simply breaking even but would expect some reasonable level of return on his investment.

If the current market value of the property is indeed only $200,000 — with a half-interest having

an undiscounted value of $100,000—a speculator might very well not offer more than 40 to 60

percent of that amount to acquire the interest.

  The $20,000 offer by Ms. McCarthy is not sufficient to pay claims in full.  After

deduction of the trustee's statutory commission of $2,750, *see* § 326(a), Bankruptcy Code, only

$17,250 would be left to pay $18,081 in claims.  While a 95% dividend would have to be

considered a good result for a chapter 7 case, the actual dividend is likely to be considerably less,

because the trustee has incurred significant legal fees in bringing the present action.  The

trustee's counsel was unable at trial to provide an accurate estimate of the amount of those fees,

but even assuming they were as low as $3,000 (plus the $250 filing fee for the adversary

proceeding), the amount available to pay claims would be only $14,000.  Of course, there is

some benefit to creditors in being paid now rather than later, and it is sometimes prudent for a

trustee to accept a settlement that winds up protracted administration of an estate even at the cost

of some reduction in the amount creditors will receive.  *See* § 704(a)(1), Bankruptcy Code

(trustee has duty to "collect and reduce to money the property of the estate . . . and close such

estate *as expeditiously as is compatible with the best interests of parties in interest.*") (emphasis

added).  The debtor's concern that any sale should maximize the value received so as to

maximize the surplus to be returned to him—while certainly entitled to some weight—is not

determinative, since the interest of creditors in being paid predominates over the debtor's interest

in receiving a surplus.[5]  Be that as it may, at the end of the day the court is left with the firm

conviction that the $20,000 offer—besides not paying claims in full—unfairly undervalues the

debtor's interest in the property.  Accordingly, the trustee's request that he be allowed to sell the

estate's half interest to Ms. McCarthy for $20,000 will be denied.

## B.

Determining whether the benefit to the estate of the sale of the whole outweighs the

detriment to Ms. McCarthy is necessarily a fact-intensive analysis, and courts have considered

numerous factors such as the economic, emotional, and psychological consequences in balancing

the hardships between the trustee and the non-debtor owner.  *Price v. Harris (In re Harris)*, 155

B.R. 948, 950 (Bankr. E.D. Va. 1993).  Here the trustee satisfied his burden of proving a benefit

---

[5]  The court disagrees with the debtor's argument that payment of a surplus is an important
component of the "fresh start" that chapter 7 was intended to confer upon financially-strapped
debtors.  For an individual debtor, the components of the bankruptcy fresh start are the discharge
and the right to retain exempt property. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct
695, 699, 78 L.Ed 1230 (1934) (explaining that bankruptcy"gives to the honest but unfortunate
debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a
new opportunity in life and a clear field for future effort, unhampered by the pressure and
discouragement of preexisting debt.").  In any event, the debtor has the same right as Ms.
McCarthy to make an offer to the trustee for the half-interest.  The fact that the debtor lacks or is
unable to borrow sufficient funds to top her offer simply reflects the economic reality that he,
like she, has little money.

8

to the estate by presenting evidence that a sale of the property could—even at its lowest

estimated value of $150,000.00—bring in enough to pay all claims and administrative expenses

in full.  These sale proceeds are the primary source of funds from which the trustee can pay

creditors.  *Voiland v. Gillissie (In re Gillissie)*, 215 B.R. 370, 380 (Bankr. N.D. Ill. 1997)

("Payment of a significant dividend to creditors from the sale of Property is a substantial benefit

to the estate.")(citations omitted); *Harris* 155 B.R. at 951 (holding that where the only source of

funds to pay creditors is the sale of the property this weighs in favor of the sale).

Once the trustee has satisfied his burden of proving a benefit to the estate from the sale of

both the debtor and the co-owner's interests, the burden shifts to the co-owner to demonstrate

that the detriment to her outweighs the benefit to the estate.  *Fitzpatrick v. Fredenberg (In re

Wilson)*, No. 09-3162, 2010 WL 56080 (Bankr. E.D. Tenn. Jan. 5, 2010); *Gazes v. Roswick (In

re Roswick)*, 231 B.R. 843, 859 (Bankr. S.D.N.Y. 1999).  On this point, the court concludes that

Ms. McCarthy has not carried her burden of proof.  She testified that she was concerned she

would be unable to find a place she could afford for the $550 a month that she pays to live in the

Raleigh Street property, and that in the present depressed real estate market, a sale would bring

so little that her half share would only barely pay off the approximately $50,000 in unsecured

debts—some of which was incurred in fixing up the property after she and the debtor were

divorced— that she has accumulated and would leave little or nothing left over for her either to

purchase or rent another place to live.  Based on her research, she thought she would have to pay

about $900 a month for a two bedroom apartment for her and her son to live in.  She was also

concerned that at her age she would not be able to get a mortgage to buy a comparable home

even if she received a lump sum payment from the trustee as her share of the sale proceeds.

9

Ms. McCarthy's concerns are by no means unreasonable.  At the same time, even if the home were sold at the lowest estimated value—$150,000—she would receive approximately $67,500.[6]  After paying off her short term debts, she would be left with about $17,500 which she could draw on to pay rent for more than a year on an apartment that costs $900 a month while she continues to save.  Although the court is sympathetic to her concerns, the only detriments to Ms. McCarthy are displacement and the prospect of receiving less for her interest than if she could wait for the real estate market to rebound.  While those concerns are entitled to some weight, they do not outweigh the interest in providing a distribution to creditors.  *See Harris*, 155 B.R at 950-951 (holding that displacement and its emotional and psychological effects did not overcome benefit to estate that resulted in payment of all joint debts, debtor's secured debts, and one-half of the debtor's scheduled unsecured debts); *Harkins v. Oswald (In re Oswald)*, 90 B.R. 218 (Bankr. N.D. W.Va. 1988)(holding that displacement alone is not a sufficient detriment to overcome substantial benefit to the estate in the form of payment to creditors especially where the co-debtor is to receive a significant lump sum payment).  Consequently, the court finds that the benefit to the estate outweighs the detriment to Ms. McCarthy and that the trustee should be permitted to sell both the debtor and Ms. McCarthy's interests in the property.[7]

---

[6] Assuming the property sold for $150,000 and that costs of the sale amounted to 10% of the sales price, this would leave $137,500 as the sale proceeds.  This $137,500 would be split between the bankruptcy estate and Ms. McCarthy, leaving each with $67,500.

[7] The mechanism by which the trustee proceeds—that is, whether, by private sale or public auction—is left to the trustee's sound business judgment.  The debtor prefers an immediate auction sale with a $150,000 reserve, but the trustee may well conclude that it would be appropriate to test the market further by reducing the asking price and listing the property for some additional period of time before resorting to the uncertainties of an auction sale.

10

A separate judgment will be entered consistent with this opinion.


Date: _____          _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge


Copies to:

Robert M. Gants, Esquire
Redmon, Peyton & Braswell
510 King St. #301
Alexandria, VA 22314
Counsel for the chapter 7 trustee

Stephen Keefe
815 Connecticut Avenue, N.W.
Washington, DC 20006
Defendant *pro se*

Elizabeth Anne McCarthy
11 South Raleigh St.
Martinsburg, WV 25401
Defendant *pro se*